IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| Plaintiff, | § | |
| V. | § | |
| | § | |
| STONEY BRETT BARTON (1) | § | No. 1:19-CR-298 (LY) |
| CHRISTOPHER LYNCH (2) | § | |
| Defendants. | § | |

# ORDER

Before the court are Defendant Lynch's Motion to Compel Production and Designation of Exculpatory and Impeachment Evidence (Dkt. #48),[1] Government's Response in Opposition to Motion to Compel Production and Designation of Exculpatory and Impeachment Evidence (Dkt. #52), Defendant Stoney Brett Barton's Partial Joinder in Motion to Compel Production and Designation of Exculpatory and Impeachment Evidence (Dkt. #55), and Government's Response in Opposition to Defendant Stoney Brett Barton's Partial Joinder in Motion to Compel Production and Designation of Exculpatory and Impeachment Evidence (Dkt. #58). Having considered the parties' written submissions, applicable law, the entire case file, and having held a hearing on August 24, 2020, the court **DENIES** the motion.

## I.    BACKGROUND

By any measure, this case is complex in terms of the nature of the charges, the span of time covered by the alleged criminal conduct, and the amount of physical and digital information assembled by the government during its investigation. The massive amount of information assembled creates a number of challenges for the defense.

---

[1] These motions were referred to the undersigned by United States District Judge Lee Yeakel, pursuant to 28 U.S.C. § 636(b)(1)(A), Federal Rule of Criminal Procedure 59(a), and Rule 1(c) of Appendix C of the Local Rules of the United States District Court for the Western District of Texas. Dkt. #53.

1

On December 20, 2019, the government provided Defendants with a USB drive that was separated into distinct descriptive folders but nonetheless totals approximately 139,000 pages. On December 31, 2020, the government provided Defendants with an unredacted copy of the agent's 40-page Special Agent Report ("SAR"). The appendices to the SAR total another 100 plus pages. Numbered exhibits to the SAR consist of approximately 3,500 pages. The government describes these exhibits as "hot documents." On January 2, 2020, the government delivered an external hard drive containing almost 10 terabytes of additional electronically stored information. This information consists primarily of mirror images of computers and other devices seized by the government during the investigation. Finally, in January 2020, the government made paper records and other physical evidence stored in 116 boxes available for review. A 23-page index of the contents of these boxes has been given to defense counsel. The parties apparently agree that the electronically stored information totals approximately 12 terabytes of data. Defendant Barton cites one source for the proposition that "[a] terabyte of printed paper pages would produce a stack approximately equal to the height of 58 Empire State Buildings." Dkt. #55 at 2 n.2.[2]

Defendant Barton request that the court order the government "to identify and designate all exculpatory material in the mountains of documentary production." Dkt. #55 at 3. Defendant Lynch's motion concludes with a request that:

> the Court require the government to disclose whether the government has reviewed all discovery for *Brady* and impeachment information and whether it possesses *Brady* and impeachment material. Furthermore, Mr. Lynch respectfully requests the Court enter an order requiring the prosecutors to promptly produce and to designate all *Brady* and impeachment materials. Dkt. #48 at 11.

---

[2] *See* Laurie A. Weiss, *Protection of Attorney-Client Privilege and Work Product in the E-Discovery Era*, *in* THE ATTORNEY-CLIENT PRIVILEGE IN CIVIL LITIGATION: PROTECTING AND DEFENDING CONFIDENTIALITY 163, 164 (Vincent S. Walkowiak ed., 4th ed. 2008); *see also* Dysart, *The Trouble with Terabytes*, 97 A.B.A.J. 33, 33 (Apr. 2011) ("Perhaps no case could be a more monumental example of the reality of modern . . . e-discovery than the ongoing Viacom copyright infringement lawsuit against YouTube filed back in 2008. In that dispute, the judge ordered that 12 terabytes of data be turned over, according to Matthew Knouff. 'People often say that one terabyte equals 50,000 trees, and 10 terabytes would be the equivalent of all the printed collections in the Library of Congress,' says Knouff, who is general counsel of Complete Discovery Source, a New York City-based . . . discovery services provider.").

The government responded with a description of the discovery provided, efforts to organize, index and summarize that discovery for review, and a willingness to work with defense counsel to assist in their review of all of the discovery. The government states that it has not received reports of technical difficulties from counsel for either defendant and, furthermore, that Defendant Lynch has not requested to review the boxes of physical evidence since they were made available. Dkt. #52 at 6.

## II.   APPLICABLE LAW

The government cannot suppress the production of exculpatory and impeaching information to the defense. *Brady v. Maryland*, 373 U.S. 83, 87 (1963). Furthermore, the government has an affirmative duty to disclose exculpatory evidence to the defense. *Kyles v. Whitley*, 514 U.S. 419, 437 (1995). Similarly, the government has an affirmative duty to disclose impeachment evidence to the defense. *Giglio v. United States*, 405 U.S. 150, 152–54 (1972). Both the parties and this court easily parrot the holding of these three seminal cases of criminal law. What is not so clear is what the government is required to do when the criminal investigation has generated 12 terabytes of electronically stored information and another 116 boxes of physical evidence.

Defendants argue and cite cases for the proposition that the government is required to both (a) review every physical and or digital page of information in its possession for exculpatory and impeachment information, and (b) specifically designate what the government believes constitutes exculpatory and impeachment information. The government responds that the law requires the government to do neither.

**III.    ANALYSIS**

Defendant Lynch does not cite a single Fifth Circuit case for the proposition that the government must review every page of the digital and physical information in its possession for potential exculpatory or impeachment information. Nor does Defendant Lynch cite a single Fifth Circuit case for the proposition that the government must specifically designate evidence as exculpatory or impeachment information. Nor does Defendant Lynch cite a single case for the proposition that the government must digitize the 116 boxes of documentary material. Defendant Barton's joinder motion does not cite any caselaw.

The government contends that the leading case in the Fifth Circuit on these issues is *United States v. Skilling*, 554 F.3d 529 (5th Cir. 2009), *vacated in part on other grounds*, 561 U.S. 358 (2010). Defendant Lynch mentions *Skilling* in its motion but the balance of cited authority lies outside this circuit and is not controlling. For example, Defendant Lynch cites *United States v. Saffarinia*, 424 F. Supp 46, 88 (D.D.C. 2020) in support. Yet the D.C. District Court specifically found "the reasoning in *Skilling* unpersuasive." *Id.* at 88. The undersigned is not in a position to be as dismissive of controlling Fifth Circuit authority. As the only Fifth Circuit authority on the subject of the government's obligations in a case involving massive amounts of discovery, the court looks to the *Skilling* opinion for guidance.

As a general rule, the government is under no duty to direct a defendant to exculpatory evidence within a larger mass of disclosed evidence. *United States v. Skilling*, 554 F. 3d at 576. The Skilling opinion noted that, "there is little case law on whether a voluminous open file can itself violate *Brady*, and the outcomes of these cases seem to turn on what the government does in addition to allowing access to a voluminous open file." *Id.* The *Skilling* opinion noted the government did more than dump documents on the defense. In that case, (a) the government

4

provided open file discovery, (b) the electronic information provided was searchable, (c) "hot documents" were designated by the government, (d) the government provided indices to these and other documents. Furthermore, the Circuit Court noted that the government was in no better position to locate any potentially exculpatory evidence than Skilling. *Id.* at 577. In addition, the Circuit Court found there was no evidence that the government found something exculpatory but hid it somewhere in hopes that the defense would never find it. Similarly, there was no evidence that the government had engaged in any other deceitful behavior.

The government's discovery production in this case is practically identical to that in *Skilling*. All digital information has been disclosed and is searchable. All physical evidence is available for review by the defense. The digital information and physical evidence have been indexed and copies of these indices have been given to the defense. The case agent's entire report, related "hot documents," and all witness statements have been tendered to the defense. There is no evidence of deceitful conduct on the part of the prosecution.

At the hearing, defense counsel acknowledged that despite possession of the electronic information for approximately eight months, they have not discovered a single piece of information constituting exculpatory or impeaching information. To date, defense counsel has not even undertaken a meaningful review of the 116 boxes of information in the government's possession. During the hearing, the government represented that so far no exculpatory or impeaching information has been located.

As the *Skilling* court explained, "[w]e do not hold that the use of a voluminous open file can never violate *Brady*." *Id.* The distinction is evidence of bad faith on the part of the government. This court shares the *Skilling* court's conclusion:

> [C]onsidering the additional steps the government took beyond merely providing [Defendants] with the open file, the equal access that [Defendants] and the government [have] to the open file, the complexity of [Defendant's] case, and the absence of evidence that the government used the open file to hide potentially

5

exculpatory evidence or otherwise acted in bad faith, we hold that the government's use of the open file did not violate *Brady*.

*Id.* at 577.

The current state of the record in this case does not support the specific relief requested by the defense. The denial of the relief sought by the defense is based largely upon their apparent unfettered access to all of the evidence. The court's opinion could change if that assumption is determined to be inaccurate. For example, simply providing the defense a USB or external hard drive with massive amounts of data does not end the matter. That data must be searchable by the defense. Similarly, the government must continue to entertain all reasonable requests for assistance in the location of information.[3]

## IV.    CONCLUSION

Accordingly, for the reasons stated above, the court **DENIES** Defendant Lynch's Motion to Compel Production and Designation of Exculpatory and Impeachment Evidence (Dkt. #48), and Defendant Stoney Brett Barton's Partial Joinder in Motion to Compel Production and Designation of Exculpatory and Impeachment Evidence (Dkt. #55).

SIGNED August 31, 2020.

_____
MARK LANE
UNITED STATES MAGISTRATE JUDGE

---

[3] It is not lost on the court that this is a "white-collar" fraud case. While intent is always an issue in any criminal case, the defense at trial in a fraud case may take many potential shapes and forms. Obviously, the defense is under no obligation to share their defensive strategy with the government. However, the defense must undertake some "self-help" in a case such as this. For example, the defense can and should make reasonable demands upon the government to locate specific documents or categories of documents.